MOY FONG v. TILLINGHAST, Commissioner of Immigration.

District Court, D. Massachusetts. June 12, 1929.

No. 4053.

Everett F. Damon, of Boston, Mass., for petitioner.

Frederick H. Tarr, U. S. Atty., and John W. Schenck, Asst. U. S. Atty., both of Boston, Mass., opposed.

MORTON, District Judge. The case is somewhat unusual because of the claim of citizenship by the applicant, supported by a Philadelphia birth certificate which he says relates to him. The petitioner says that he was born at Philadelphia, Pa., and has lived there in the Chinese colony and in Trenton, N. J., all his life until he went to China in January, 1926. The birth certificate shows that a person bearing the same name as the applicant was born at Philadelphia on August 15, 1900. The petitioner was living in this country as early as 1925, because in that year he applied for a citizen's return certificate. A record of these proceedings was put in evidence on the present application. At that time he was examined by the immigration officials, and also as witnesses, his father, and Young Wing, and Jung Foo. All of them testified, without contradictions or discrepancies, that he was to their knowledge a native-born citizen of this country; and the claim was supported by an apparently regular birth certificate as above stated. There was no opposing evidence, nor were any suspicious facts developed. The only weakness in the case suggested by the immigration officials was the lack of the mother's death certificate. The testimony was that she died in November, 1918, but there is no record of death in her name. The immigration officials made inquiries and were informed at the registry of deaths in Philadelphia that mistakes in getting Chinese names correctly were not uncommon. They found that there had been such a school as the applicant said he had attended with teachers of the same names, and they interviewed the teachers. One of them, a Chinese minister, said that the applicant's photograph was of a person whom he had seen but could not place. The other, Miss Parker, said that she had taught there during the time stated, but could not undertake to remember all the Chinese who had been her pupils. The denial of the return certificate by the San Francisco authorities appears on the record to have been purely arbitrary and entirely without legal justification.

The present case is substantially the same, except for the change of testimony about the date of the mother's death. There is nothing else in it which would warrant a finding of fraud. Certain minor discrepancies, e. g., those relating to the numbers on Race street, one witness saying that the father and son moved from 912 to 922 and the other that they moved from 912 to 933, might obviously be due to honest mistake. As to the mother's death, both the applicant, his father, and the witness, Young Wing, appear on the record to have testified in 1925 that she had died six or seven years before; and the father gave the exact date of her death, "November 10, 1918." They now say that the correct date was 1908, and that they did not testify to the period of six or seven years. While one can never be quite certain how completely our language is interpreted to Chinese and their replies to us, I think the immigration tribunals might reasonably conclude that there had been a change of testimony on this point, and that the woman whose death certificate was produced is not the one about whom the applicant and his witnesses testified in 1925. Indeed this is my own opinion.

This change of testimony is the only fact worthy of serious consideration against the applicant. The real question in this case is how far it subverts and casts doubt upon his claim. He is either a native-born citizen, as he says, or an imposter trying to take advantage of this birth certificate. The date of the mother's death has no direct bearing on this issue; it is immaterial except on the matter of credibility. The applicant knows considerable English, having offered in 1925 to submit to examination in our language, though saying he preferred Chinese; and he knows something about Philadelphia. The examination might have been fuller on this point, but at least no suspicious ignorance of the city has been demonstrated. He has certainly lived many years in this country, probably in or near Philadelphia. In age and knowledge he corresponds with what could fairly be expected of the person in the birth certificate. These established facts are not in the least affected by the false testimony about the mother's death. There is not a single fact or statement in the testimony which directly contradicts or impairs the applicant's story or that of his witnesses about his birth.

In Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010, it was said: "It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country." In my opinion the immigration proceedings in this case disregarded this rule. Nobody can doubt that the weight of the evidence was overwhelmingly in favor of the petitioner. I am unable to see how it can fairly or reasonably be regarded as overthrown by the false testimony on the immaterial point of the mother's death.

This is sufficient to dispose of the case. While it is not the province of the court to speculate about the reasons for the false tes-

timony, I venture to state what seems to me to be the explanation of it. Accepting the father's original story about his wife's death, she appears to have died at the height of the "Flu" epidemic. His brief description of her illness is entirely consistent with a virulent case of that disease. She was attended only by a Chinese doctor, which may well account for the failure properly to record the death. When these Chinese found that on account of some—to them—unfathomable peculiarity of the Occidental mind the applicant's birth here would not be recognized unless his mother's death certificate was produced, they hunted up the death record of Jennie Moy, who had died ten years earlier, and endeavored to readjust their testimony to palm it off as that of the applicant's mother. If this be the true explanation, their conduct, while grossly illegal, was not entirely inexcusable.

On all the evidence, I find and rule that the applicant did not have a fair hearing before the immigration tribunals and that the writ must issue. As neither party desires to introduce further evidence, an order will be entered discharging the petitioner, as a native-born citizen of this country.